Christopher D. Moon (State Bar No. 246622)
*chris@moonlawapc.com*
Kevin O. Moon (State Bar No. 246792)
*kevin@moonlawapc.com*
**MOON LAW APC**
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 915-9432
Facsimile: (650) 618-0478

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARDO LEON and LOUIE NEVAREZ, individually, and on behalf of a class of other similarly situated individuals, | Case No.: **'19CV2375 JLS  BGS** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SUBARU OF AMERICA, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

The allegations contained in this Complaint are based on Plaintiffs' personal knowledge as to Plaintiffs' own conduct and on information and belief as to all other matters based on an investigation by Plaintiffs' Counsel.

## NATURE OF THE ACTION

1.    Plaintiffs Leonardo Leon and Louie Nevarez bring this class action against Defendant Subaru of America, Inc. ("Subaru" or "Defendant") because Defendant is manufacturing, marketing and selling new vehicles with defective and

dangerous windshields that are spontaneously and/or unreasonably cracking, chipping and otherwise breaking, often within weeks or a few months of purchase (the "defect"). Further, replacement windshields provided by Defendant and paid for by Class Members (as defined below) suffer from the same defect and therefore are equally defective and dangerous.

2. Plaintiffs demand that Defendant accept responsibility for replacing damaged windshields under Subaru's new vehicle warranty at no charge to Class Members and reimburse Class Members for losses suffered as a result of the defect. In addition, or alternatively, Subaru should be required to buy back the Class Vehicles.

3. Subaru has built a loyal customer base by marketing itself as "More than a car company.™" As part of that image, Subaru emphasizes that it cares about its customers and is committed to their safety. Indeed, Subaru touts its "industry-leading safety innovations" on its website and elsewhere:

There's safe, and then there's

# SUBARU SAFE

When you choose a Subaru, you're not just choosing a car. You're choosing a company with a lifetime commitment to protecting those you love. Learn more about our industry-leading safety innovations, and why Subaru is a leading choice among parents with teen drivers.

4. Subaru emphasizes in its advertising that consumers should trust the company, should trust that its vehicles are reliable, and should know that Subaru is working for "a greater good." This is reflected on its website, where Subaru states:

As Kelley Blue Book's Most Trusted Brand for five years running [i], Subaru of America is committed to building vehicles our customers can rely on while being a part of a greater good.

5. A windshield that is chipped or cracked poses a significant safety hazard. "Even a small crack on glass means your windshield's structural integrity

CLASS ACTION COMPLAINT

has been compromised, which means it is now a safety hazard to you and your passengers." https://info.glass.com/can-a-cracked-windshield-shatter (last visited December 9, 2019). "Driving with a damaged or cracked windshield can hinder a motorist's visibility and also compromise the structural integrity of the automobile during a roll-over incident." http://news.aaa-calif.com/news/07-01-19-windshield-damage (last visited December 9, 2019). In addition, "[a]uto glass is supposed to meet federal safety standards and is imperative for airbags to function properly." *Id.*

6.      Selling vehicles with dangerously defective windshields and refusing to take responsibility for the defects is directly contrary to the safety conscious, trustworthy, and reliable image Subaru projects.

7.      Subaru is well aware from customer complaints, reports from its dealers, and National Highway Traffic Safety Administration ("NHTSA") filings that windshields are prematurely and unreasonably breaking in Class Vehicles (defined below) all across the country, often spontaneously or under circumstances that should not cause a break. Nevertheless, Subaru refuses to honor its commitment to its loyal customers, is jeopardizing the safety of the public, and is forcing its customers to bear the expense of Subaru's mistakes and malfeasance.

8.      Plaintiffs bring their claims individually and on behalf of all persons or entities in the United States and/or California who purchased or leased a model year: (1) 2017-2020 Subaru Outback; (2) 2017-2020 Subaru Forester; (3) 2017-2020 Subaru Crosstrek; (4) 2017-2020 Impreza; (5) 2017-2020 Legacy; and (6) 2019-2020 Ascent (the "Class Vehicles"), as well as those who purchased or leased a Class Vehicle and suffered losses as a result of the defect during the period they possessed the vehicle.

9.      Upon information and belief, the Class Vehicles all contain the same or substantially similar type of windshields. The Class Vehicles pose an imminent and significant safety hazard to vehicle operators and the public because the

windshields are suddenly and unreasonably breaking without cause, they are dangerously distracting drivers, impairing vision through the windshields, impeding the safe operation of the vehicles, and preventing the safe and proper operation of driver assist systems such as Eyesight® Driver Assist Technology ("Eyesight"). In addition, the defective windshields are causing Class Members to incur substantial monetary losses and other damages.

10. Defendant has been on notice of this defect in the windshields used in the Class Vehicles for years but has concealed its knowledge from the public and continues to deny the existence of the defect while forcing consumers to bear the costs and expenses associated with the defect.

11. In addition to impairing vision, decreasing the structural integrity of the vehicle and jeopardizing the proper operation of the airbags, another danger and damage associated with the defective windshields is that cracks in the windshield prevent the safe and proper operation of Subaru's "Eyesight® Driver Assist Technology." This is a safety feature that customers pay for and rely upon. According to Subaru, the Eyesight system:

> [I]s the culmination of everything Subaru engineers know about safety, and Subaru has sold over 1 million EyeSight-equipped vehicles. Adding confidence to every trip, EyeSight monitors traffic movement, optimizes cruise control, and warns you if you sway outside your lane. EyeSight has been found to reduce the rate of rear-end crashes with injuries by up to 85%.

12. Without the EyeSight system, consumers are deprived of an important safety feature, for which they pay when purchasing their vehicles. Indeed, Subaru advertises the importance of this system on its website as follows:

///

///

///

13.    When the broken windshields in the Class Vehicles are replaced, vehicle owners incur substantial additional expenses beyond the cost of replacing the windshield to have the Eyesight system recalibrated.

14.    In addition to having their personal safety and that of the public put at risk, owners of Class Vehicles are incurring substantial monetary losses because Defendant refuses to replace the broken windshields under warranty or to reimburse consumers for the broken windshields and other losses resulting from the defect.

15.    Class Members have brought this defect to the attention of Defendant but Defendant has refused to accept liability, thereby necessitating the filing of this class action.

16.    Plaintiffs and Class Members assert claims under the Magnuson-Moss Warranty Act, breach of express warranty, breach of implied warranty, negligent misrepresentation/omission, breach of California law, and unjust enrichment.

17.    As a direct result of Defendant's business practices and wrongful conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages, including repair and replacement costs, loss of use of their Class Vehicles, loss of the benefit of their bargain, and costs and lost time associated with the defect and bringing in their Class Vehicles for diagnosis and repair.

///

## JURISDICTION

18.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.   This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

19.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Leonardo Leon's claims occurred in this District.   In addition, Plaintiff Leonardo Leon purchased a defective Class Vehicle in this District, and Defendant has marketed, advertised, and sold Class Vehicles within this District.

## PARTIES

### A.    Plaintiffs

20.    Plaintiff Leonardo Leon is a resident of Vista, California.   In August 2019, Plaintiff Leon purchased a used 2017 Subaru Legacy from Toyota of Poway in Poway, California.

21.    Plaintiff Louie Nevarez is a resident of Lancaster, California.   On or about May 9, 2018, Plaintiff Nevarez purchased a new 2018 Subaru Impreza Sport vehicle from a Subaru dealership (Subaru Antelope Valley) in Lancaster, California.

### B.    Defendant

22.    Defendant Subaru is incorporated in New Jersey and has its principal place of business and headquarters in Camden, New Jersey.   It is there that Subaru has a 250,000 square-foot headquarters campus wherein approximately 600 employees, including its officers, and the sales, marketing, and distribution departments, among others, are based and carry out the business of Subaru. There

also is an approximately 100,000 square foot national service training center for Subaru adjacent to its headquarters campus which houses service training, service engineering and product engineering functions.

23.    Subaru markets and distributes automobiles throughout the United States and is a division of the Japanese conglomerate Subaru Corporation.

24.    Subaru has a nationwide dealership network and operates offices and facilities throughout the United States.

25.    Subaru manufactured, marketed and sold the Class Vehicles, including Plaintiffs' vehicles.

## FACTUAL ALLEGATIONS

26.    Plaintiffs purchased their respective Class Vehicles for personal, family or household purposes, and did so relying upon Subaru's representations in its advertising, its website and/or in its dealerships that it is committed to selling safe and reliable vehicles.

27.    Plaintiffs both suffered a broken windshield that occurred spontaneously and/or under circumstances in which non-defective windshields would not have broken.

28.    In September 2019, Plaintiff Leon first noticed a crack near the bottom portion of his vehicle's windshield.  Over the next few days, the crack splintered and expanded to cover much of the windshield.  The crack appears to have occurred spontaneously and not as the result of the windshield being impacted by a foreign object.  Plaintiff Leon's vehicle is equipped with Subaru's "Eyesight" technology.  According to a Subaru dealership in San Diego County, it would cost approximately $1,300 to repair the damage to Plaintiff Leon's vehicle, including recalibrating the "Eyesight" system.

29.    On or about August 15, 2019, Plaintiff Nevarez was driving his Subaru vehicle when, suddenly, the vehicle's windshield cracked.  The crack stretched from the driver's side of the windshield all the way to the passenger's

CLASS ACTION COMPLAINT

side.  Mr. Nevarez does not know what caused the windshield to crack, and it appears to have occurred spontaneously, and not as a result of a foreign object impacting the windshield.  At the time of the damage, the vehicle had approximately 15,000 miles, and was within the warranty period.  Because of the severity of the crack, Mr. Nevarez had the windshield replaced by an independent repair shop, the cost of which replacement was over $300.

30.    At all relevant times, Defendant acted through its authorized agents and representatives in its dealer network while performing activities associated with advertising, marketing and selling Class Vehicles, and supplying and/or replacing broken windshields in Class Vehicles.

31.    At all times relevant to this action, Defendant manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Subaru brand name.

32.    Defendant publicizes the safety benefits and innovativeness of its engineering group to consumers, specifically representing the following on its website:



The strength of our
ENGINEERING
Subaru engineers never stop thinking of new and innovative ways to keep our vehicles on the leading edge of safety.

33.    Subaru provides a three-year/36,000 mile warranty for its new vehicles ("new vehicle warranty" or "NVW").  The new vehicle warranty expressly covers defects in materials or workmanship.

34.    The new vehicle warranty for all of the Class Vehicles are the same, or substantially similar. For example, the 2018 warranty provided in pertinent part:

# Warranties

## 2018 Warranty

Below is a brief description of the Subaru Limited Warranty for 2018 model year Subaru vehicles that is provided to each buyer by Subaru at no additional charge. Your Subaru Dealer has complete details concerning the warranty and any exclusions and/or restrictions that may apply. Please visit your nearest Subaru Dealer for this further information. Click here for optional extended protection beyond the warranty.

## Who Makes These Warranties

These warranties are made by SUBARU of America, Inc. ("SOA")[1], One Subaru Drive, P.O. Box 9103, Camden, NJ 08101.

## When These Warranties Apply

These warranties only apply if the vehicle was imported or distributed by SOA and sold to the first retail purchaser by an Authorized SUBARU Retailer in the United States. Any and all repairs must be performed by an Authorized SUBARU Retailer located in the United States. Every owner of the vehicle during the warranty period shall be entitled to the benefits of these warranties. If the vehicle is sold or otherwise transferred, it is recommended and requested that the new owner promptly send written notice of the transfer of ownership to SOA at the address indicated above.

## Warranty Periods

Warranty coverage begins on the date the vehicle is delivered to the first retail purchaser. If the vehicle was used as a demonstrator or company vehicle before being sold at retail, warranty coverage begins on the date the vehicle was first placed in such service.

## What is Covered

These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use:

- In any part of the 2018 model year SUBARU which is identified on the inside front cover of this Warranty & Maintenance Booklet (the "vehicle").
- Any Genuine SUBARU Optional Accessories[2]
- In addition, adjustment services are covered one time only during the first 36 months/36,000 miles of operation, whichever comes first.

## New Vehicle Limited Warranty

BASIC COVERAGE is 3 years or 36,000 miles, whichever comes first. Subject to the exclusions listed in this warranty, it covers the entire vehicle.

35.     The windshields in the Class Vehicles are defective in materials and/or workmanship. Unfortunately, the replacement windshields supplied by Subaru for the Class Vehicles suffer from the same defect and likewise are spontaneously and otherwise unreasonably breaking.

36.     Subaru, directly and through its authorized dealers, has advised consumers that it is not replacing broken windshields under the new vehicle warranty that comes with the Class Vehicles.

37.     Subaru represents as part of its new vehicle warranty terms that "Every owner of the vehicle during the warranty period shall be entitled to the benefits of these warranties."  In other words, the warranty remains with the vehicle to the benefit of subsequent purchasers throughout the duration of the warranty period.

38.     In its advertising, Subaru emphasizes the safety, quality and reliability of the Class Vehicles knowing that consumers, including Plaintiffs and Class Members, rely upon such representations when purchasing or leasing vehicles.

39.     When Plaintiffs and Class Members purchased or leased their Class

Vehicles, they relied on the reasonable expectation that the Class Vehicles would be safe to operate and equipped with windshields that were free from defects and did not pose a threat to their health or safety.

40.    When Class Members replaced windshields in their Class Vehicles after breaks and other physical damage occurred, they reasonably expected that the Subaru-specific replacement windshields would be free of defects and otherwise safe and merchantable.

41.    Plaintiffs and the Class Members operated their Class Vehicles in a reasonably foreseeable manner and as the Class Vehicles were intended to be used but nevertheless suffered significant damages to their windshields as a result of the defect.

42.    Plaintiffs and the Class Members have suffered ascertainable losses as a result of Defendant's wrongful acts and omissions.

43.    Particularly given the involvement of its engineers in the design and production of Subaru vehicles, Defendant has known for years of defects in the windshields of earlier model Subaru vehicles, including by way of previous lawsuits involving earlier model year vehicles, and Defendant is aware of a tremendous volume of complaints of this defect in the windshields of the Class Vehicles.

44.    Upon information and belief, Defendant had pre-production testing, engineering studies and other analyses performed on the Class Vehicles, including the windshields, before they were sold to consumers.

45.    Upon information and belief, Defendant received pre-production reports, engineering studies, testing results and/or other analyses showing that the windshields in the Class Vehicles were defective, but nevertheless allowed the Class Vehicles to be sold to the public.

46.    Upon information and belief, Defendant knows from prior litigation and consumer complaints concerning other Subaru vehicles that the windshields in

the Class Vehicles are defective.

47.    Upon information and belief, Defendant began receiving unusually high volumes of complaints concerning the windshields in the Class Vehicles soon after the vehicles were released for sale to the public; this includes claims lodged with Subaru's dealer network around the country for repairs and coverage for the broken windshields under their new vehicle warranties.

48.    Owners of Class Vehicles have lodged numerous complaints regarding the spontaneous cracking of windshields and the extremely unusual rate and instances of failure of windshields in the Class Vehicles as compared to other vehicles that they have owned. The use of a new type of "acoustic glass" in the windshields of Class Vehicles coincides with the widespread problems.

49.    There have been at least hundreds of complaints reported to the NHTSA from consumers all across the country of the defective windshields in the Class Vehicles. Consumers advise that windshields in the Class Vehicles are breaking and cracking for no known reason or under circumstances in which it is unreasonable and unexpected for a windshield to break.  Because the majority of owners do not take the time to complete a NHTSA report, it is reasonable to presume that the number of consumers who have already experienced one or more windshield failures in their Class Vehicles is many multiples higher than reported to NHTSA.

50.    The complaints to NHTSA include consumers' concerns for safety. The following are just a sample of the numerous complaints involving the Class Vehicles:

///

///

///

///

///

**Date Complaint Filed:** 04/05/2019           **Date of Incident:** 03/25/2019
**Component(s):** VISIBILITY/WIPER         **NHTSA ID Number:** 11194149
**Consumer Location:** AUBURN, CA

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2018 |

Details ▲           0 Available Documents   ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SJAGC6JH...

**SUMMARY:**
2018 SUBARU FORESTER WITH EYESIGHT. 16 INCH LONG CURVED CRACK ORIGINATING FROM DEFROSTER AREA AT BOTTOM OF WINDSHIELD ON DRIVER'S SIDE, CURVING UP INTO DRIVER'S FIELD OF VISION. CRACK OCCURRED WHILE VEHICLE WAS STATIONARY, PARKED IN OWNER'S DRIVEWAY. NOTHING WAS SEEN OR HEARD STRIKING THE WINDSHIELD BEFORE THE CRACK SUDDENLY APPEARED.

**Date Complaint Filed:** 10/28/2019           **Date of Incident:** 11/20/2018
**Component(s):** VISIBILITY/WIPER         **NHTSA ID Number:** 11271667
**Consumer Location:** MISSOULA, MT

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2018 |

Details ▲           0 Available Documents   ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2GTABC6JH...

**SUMMARY:**
I WAS DRIVING ON THE FREEWAY 3 MONTHS AFTER PURCHASING THE CAR BRAND NEW, AND THE WINDSHIELD CRACKED ON THE DRIVERS SIDE ABOUT HALFWAY UP. I REPLACED THE WINDSHIELD ONLY TO HAVE IT CRACK IN THE SAME SPOT 3 MONTHS LATER.

**Date Complaint Filed:** 10/29/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** TEMPE, AZ

**Date of Incident:** 06/28/2019
**NHTSA ID Number:** 11271793

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2018 |

Details ▲                                          0 Available Documents ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2GTALC5JH...

**SUMMARY:**
THE WINDSHIELD DEVELOPED 2 LARGE CRACKS THAT HINDER THE VISIBILITY ON BOTH THE DRIVER AND PASSENGER SIDE. THE CRACKS DEVELOPED OVER APPROXIMATELY 4 MONTHS WHILE PARKED.

**Date Complaint Filed:** 10/29/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** REDWOOD CITY, CA

**Date of Incident:** 01/18/2019
**NHTSA ID Number:** 11271755

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2017 |

Details ▲                                          0 Available Documents ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2GPABC4HG...

**SUMMARY:**
I AM THE OWNER OF A 2017 SUBARU CROSSTREK THAT WAS SUBJECT TO A FAULTY WINDSHIELD RESULTING IN REPLACEMENT. THE VEHICLE HAD DEVELOPED A SPONTANEOUS CRACK FROM NO APPARENT OR OBVIOUS SOURCE OTHER THAN NORMAL CONDITIONS. SPECIFICALLY, THIS CRACK DEVELOPED OVERNIGHT WHILE SITTING IN THE DRIVEWAY NOT IN MOTION AND NOT EXPOSED TO DAMAGE CAUSING DEBRIS. THE NEXT MORNING, AN INCONSPICUOUS CRACK AT ONLY A FEW MILLIMETERS APPEARED. OVER THE COURSE OF THE NEXT FEW DAYS, THE CRACK HAD GROWN TO TENS OF CENTIMETERS. THE END RESULT WAS AN UNSAFE AND HAZARDOUS WINDSHIELD CREATING VISIBILITY ISSUES AND A RISK OF INTEGRITY FAILURE. THE WINDSHIELD WAS REPLACED BY THE DEALER AT FULL COST NOT COVERED UNDER WARRANTY. THIS WAS NOT COVERED UNDER RECALL AND WAS PAID FOR OUT OF POCKET. ATTACHED IS A COPY OF THE INVOICE WITH COSTS FOR THE WINDSHIELD PARTS AND LABOR.

**Date Complaint Filed:** 04/29/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** AUSTIN, TX

**Date of Incident:** 04/28/2019
**NHTSA ID Number:** 11204408

**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2019 |

**Details ▲**                                   0 Available Documents  

**Crash:** No   **Fire:** No   **Number of Injuries:** 0   **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSANC5K3...

**SUMMARY:**

I BOUGHT NEW 2019 SUBARU OUTBACK 3 WEEKS AGO AND I SEE A CRACK DEVELOPED FROM PASSENGER SIDE OF THE WINDSHIELD IN THE CENTER FOR NO REASON WHILE THE CAR WAS PARKED IN THE GARAGE FOR MORE THAN 36 HOURS.I DIDN'T EXPERIENCE ANYTHING HITTING THE WINDSHIELD, AND ITS SPREADING OVER 2 FT ACROSS THE WINDSHIELD. THE CAR HAS 1,300 MILES ON IT. THIS IS CLEARLY A DEFECTIVE WINDSHIELD.

**Date Complaint Filed:** 10/27/2019
**Component(s):** UNKNOWN OR OTHER
**Consumer Location:** ALLEGAN, MI

**Date of Incident:** 08/01/2019
**NHTSA ID Number:** 11271341

**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2019 |

**Details ▲**                                   0 Available Documents

**Crash:** No   **Fire:** No   **Number of Injuries:** 0   **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2GTAEC9KH...

**SUMMARY:**

I WAS DRIVING DOWN A ROAD THAT IS A 45MPH ROAD, AND I DONT HEAR A ROCK HIT MY WINDSHIELD BUT I LOOK DOWN AND NOTICE I HAVE A SMALL CRACK STARTING AT THE VERY EDGE OF MY WINDSHIELD, WHICH THEN SPREAD ACROSS MY WINDSHIELD RATHER QUICKLY.

**Date Complaint Filed:** 10/31/2019

**Date of Incident:** 10/31/2019

**Component(s):** VISIBILITY/WIPER

**NHTSA ID Number:** 11277296

**Consumer Location:** FAIRFIELD, CT

All Products Associated with this Complaint ▲

| **Vehicle Make** | **Model** | **Model Year(s)** |
|---|---|---|
| SUBARU | CROSSTREK | 2019 |

Details ▲                                                   0 Available Documents ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF2GTACC3K9...

**SUMMARY:**

WAS SITTING IN MY CAR WAITING IN A PARKING LOT AND I LOOK OUT MY WINDSHIELD AND A
CRACK WAS HAPPENING RIGHT IN FRONT OF MY EYES, I'VE ONLY HAD THE CAR FOR A WEEK
AND HAD AROUND 300 MILES ON IT

**Date Complaint Filed:** 07/26/2018

**Date of Incident:** 07/17/2018

**Component(s):** VISIBILITY/WIPER

**NHTSA ID Number:** 11113915

**Consumer Location:** LOS ALTOS HILLS, CA

All Products Associated with this Complaint ▲

| **Vehicle Make** | **Model** | **Model Year(s)** |
|---|---|---|
| SUBARU | CROSSTREK | 2018 |

Details ▲                                                   0 Available Documents ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF2GTALC3JH...

**SUMMARY:**

CRACK APPEARED IN LOWER DRIVER'S SIDE PORTION OF WINDSHIELD. CAR WAS PARKED
WHEN CRACK APPEARED. NO KNOWN SIGNIFICANT DAMAGE TO WINDSHIELD. CRACK APPEARS
TO HAVE STARTED UNDERNEATH WINDSHIELD WIPER AT THE DE-ICER AREA AND THEN SPREAD
UPWARDS.

**Date Complaint Filed:** 04/02/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** FORT COLLINS, CO

**Date of Incident:** 03/15/2019
**NHTSA ID Number:** 11193473

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | CROSSTREK | 2019 |

Details ▲                                              0 Available Documents   ⑦

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2GTAMC5K8...

**SUMMARY:**
BOUGHT A BRAND NEW 2019 SUBARU CROSSTREK, A CRACK AT THE BOTTOM OF THE
WINDSHIELD JUST APPEARED ONE MORNING AFTER WARMING IT UP IN 20 DEGREE WEATHER, IN
MICHIGAN. CRACK STARTED IN THE WIPER HEATING ELEMENT AREA AND THE CRACK SPREAD
ALL THE WAY TO THE TOP. NO ROCK CHIPS ARE PRESENT. THE CAR IS JUST OVER 3 MONTHS
OLD, 1700 MILES. I READ ELSEWHERE THAT THE NEWER OUTBACKS HAD THE SAME ISSUES.
DOES CROSSTREK HAVE THE SAME ISSUES? SUBARU WON'T COVER IT. TOTAL BS.

**Date Complaint Filed:** 10/29/2019
**Component(s):** STRUCTURE , VISIBILITY/WIPER
**Consumer Location:** OAK PARK, MI

**Date of Incident:** 05/23/2019
**NHTSA ID Number:** 11276956

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2019 |

Details ▲                                              0 Available Documents   ⑦

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSAJC6K3...

**SUMMARY:**
I PURCHASED A NEW 2019 OUTBACK AT THE END OF MARCH IN 2019. IN MAY 2019, MY
WINDSHIELD SPONTANEOUSLY CRACKED, DIAGONALLY ACROSS THE ENTIRE WINDSHIELD. I
TOOK IT TO THE DEALERSHIP IN JULY TO NOTE THE CRACK AND REQUEST THEY REPLACE IT
SINCE IT SEEMED TO HAPPEN WITHOUT ANY IMPACT. THE CRACK BEGAN FROM THE TOP EDGE
ON THE PASSENGER SIDE. I NEVER RECEIVED A RESPONSE FROM SUBARU OR THE
DEALERSHIP.

**Date Complaint Filed:** 10/28/2019

**Date of Incident:** 10/25/2019

**Component(s):** VISIBILITY/WIPER

**NHTSA ID Number:** 11271431

**Consumer Location:** SUNNYVALE, CA

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2019 |

Details ▲                                                    0 Available Documents  ❓

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSAFC7K3...

**SUMMARY:**
THE WINDSHIELD OF MY CAR CRACKED BY ITSELF WHILE IT WAS PARKED AT THE PARKING RAMP AT WORK.

**Date Complaint Filed:** 10/28/2019

**Date of Incident:** 10/09/2019

**Component(s):** STRUCTURE , UNKNOWN OR OTHER

**NHTSA ID Number:** 11271451

**Consumer Location:** CASTLE HAYNE, NC

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2019 |

Details ▲                                                    0 Available Documents  ❓

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSANC4K3...

**SUMMARY:**
CRACK APPEARED IN WINDSHIELD WITH NO APPARENT CAUSE AND QUICKLY EXPANDED, REQUIRING REPLACEMENT. FIRST NOTICED CRACK WHILE DRIVING ON CITY STREET. NO VISIBLE NICK, NOTHING APPEARED TO HAVE HIT WINDSHIELD PRIOR TO APPEARANCE OF CRACK.

**Date Complaint Filed:** 10/29/2019
**Date of Incident:** 10/22/2019
**Component(s):** UNKNOWN OR OTHER
**NHTSA ID Number:** 11276964
**Consumer Location:** ARDEN, NC

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2019 |

Details ▲                                              0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSAJCXK3...

**SUMMARY:**
WINDSHIELD CRACKED FOR NO APPARENT REASON, LARGE CRACK ON PASSENGER SIDE. I WAS
DRIVING MY CAR ON CITY STREETS WHEN THIS HAPPENED.

**Date Complaint Filed:** 10/28/2019
**Date of Incident:** 05/29/2019
**Component(s):** VISIBILITY/WIPER
**NHTSA ID Number:** 11271432
**Consumer Location:** RANDOLPH, NJ

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2018 |

Details ▲                                              0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** 4S4BSANC9J3...

**SUMMARY:**
MY WINDSHIELD CRACKED FOR SEEMINGLY NO REASON, WHILE DRIVING ON CLEAN AND CLEAR
HIGHWAY. I DIDN'T NOTICE ANYTHING HIT THE WINDSHIELD, BUT A HUGE CRACK APPEARED. I'M
REPORTING THIS BECAUSE I'VE READ THAT THIS IS A COMMON OCCURRENCE ON 2017 - 2019
SUBARU OUTBACKS, AND I WANTED YOU TO BE AWARE OF MINE.

Date Complaint Filed: 10/27/2019      Date of Incident: 05/01/2019
Component(s): VISIBILITY/WIPER      NHTSA ID Number: 11271422
Consumer Location: FORT COLLINS, CO

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | OUTBACK | 2018 |

**Details** ▲      0 Available Documents 

Crash: No    Fire: No    Number of Injuries: 0    Number of Deaths: 0

Manufacturer: Subaru of America, Inc.
Vehicle Identification No. (VIN): 4S4BSAFC1J3...

**SUMMARY:**
WINDSHIELD CRACKED AND NEEDED TO BE REPLACED 2 TIMES IN FIRST 20 MONTHS WE OWNED
IT. WINDSHIELD NEEDED TO BE REPLACED, AND DRIVER-ASSIST (EYESIGHT) SYSTEM
RECALIBRATED TO OPERATE SAFELY. HAPPENED IN JANUARY 2018, AND MAY 2019

Date Complaint Filed: 10/29/2019      Date of Incident: 10/18/2019
Component(s): VISIBILITY/WIPER      NHTSA ID Number: 11271786
Consumer Location: SPRINGDALE, AR

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

**Details** ▲      0 Available Documents

Crash: No    Fire: No    Number of Injuries: 0    Number of Deaths: 0

Manufacturer: Subaru of America, Inc.
Vehicle Identification No. (VIN): JF2SKAWC9KH...

**SUMMARY:**
WHILE TRAVELING AT APPROXIMATELY 70 MPH ON AN INTERSTATE WITH LITTLE TO NO TRAFFIC
FOR APPROXIMATELY 1/4 MILE AHEAD OR BEHIND MY VEHICLE THE WINDSHIELD
SPONTANEOUSLY CRACKED FROM THE BOTTOM OF THE WINDSHIELD, NEAR THE CENTER OF
THE WINDSHIELD, VERTICALLY TOWARDS THE TOP AND THEN TURNED HORIZONTAL. THERE
WAS NO SOUND OF AN IMPACT OR EVIDENCE OF AN EXTERNAL FACTOR CAUSING THE
WINDSHIELD TO FRACTURE.

**Date Complaint Filed:** 10/29/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** SAN JOSE, CA

**Date of Incident:** 10/12/2019
**NHTSA ID Number:** 11276859

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

Details ▲                                    0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAKC0KH...

**SUMMARY:**
WE BOUGHT THE VEHICLE IN DECEMBER 2018. SINCE THEN WE HAVE HAD THE WINDSHIELD
CRACK ON US TWICE. THE FIRST CRACK DEVELOPED 3 MONTHS AFTER THE DATE OF THE
PURCHASE. WE NOTICED THE CRACK AFTER GETTING BACK INTO THE VEHICLE WHILE IT WAS
PARKED OUTSIDE. THE SECOND CRACK APPEARED IN OCTOBER 2019. THE SECOND CRACK
DEVELOPED WHILE DRIVING ON THE HIGHWAY. IT WAS EARLY IN THE MORNING AND THERE
WERE NO OTHER VEHICLES IN FRONT OF ME. I WAS DRIVING AND HIT A SMALL BUMP IN THE
ROAD. IMMEDIATELY RIGHT AFTER I NOTICE THE CRACK DEVELOP. BOTH TIMES THE CRACK WAS
ON THE DRIVER SIDE DIRECTLY ACROSS THE LINE OF SIGHT.

**Date Complaint Filed:** 10/28/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** MOUNT PROSPECT, IL

**Date of Incident:** 05/15/2019
**NHTSA ID Number:** 11271678

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

Details ▲                                    0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAEC7KH...

**SUMMARY:**
A SEVERELY CRACKED WINDSHIELD DEVELOPED OVERNIGHT WHILE CAR WAS STATIONARY IN
OWNERS DRIVEWAY. THE CRACK WAS IN THE FORM OF A SPIDER WEB WITH NO EVIDENCE OF
IMPACT OF ANY KIND. THE AREA OF THE CRACKED WINDSHIELD WAS PERFECTLY SMOOTH, WITH
NO DEFORMATION FROM ANY KIND OF IMPACT.

**Date Complaint Filed:** 10/28/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** LOCKPORT, IL

**Date of Incident:** 09/19/2019
**NHTSA ID Number:** 11271655

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

**Details** ▲                                    0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAGC4KH...

**SUMMARY:**
***WINDSHIELD CRACKED*** JUST LIKE MANY OTHERS THAT REPORTED THE SAME. THE WINDSHIELD CRACKED STANDING IN THE GARAGE. STARTED FROM ALL THE WAY ON THE BOTTOM AND ARCHED OVER TO THE MIDDLE OF THE WINDSHIELD AND SO FAR IT HAS STOPPED SPREADING. THERE IS NO SIGN OR IMPACT FROM ANY ROCKS OR DEBRIS. JUST A SOLID LINE. I HOPE SUBARU WILL LIVE UP TO THIS AND REPLACE THE WINDSIELD AND CALIBRATE THE EYE SIGHT UNDER FULL WARRANTY. CAR HAS 12K AND HAD IT SINCE FEB. 2019. THERE IS A LAWSUIT CURRENTLY PENDING ON THIS ISSUE AND IT STATED TO FILE A COMPLAINT HERE. I BOUGHT THIS CAR BECAUSE OF HOW SAFE THEY CLAIM IT IS. NOW I HAVE A NEW BORN AND I DONT KNOW IF THIS CAR IS AS SAFE AS IT CLAIMS TO BE DUE TO THIS FAULTY WINDSHIELD.

**Date Complaint Filed:** 10/28/2019
**Component(s):** UNKNOWN OR OTHER
**Consumer Location:** SCHENECTADY, NY

**Date of Incident:** 10/09/2019
**NHTSA ID Number:** 11271641

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

**Details** ▲                                    0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAEC6KH...

**SUMMARY:**
THERE WINDSHIELD WENT FROM FINE, NOT CHIPPED OR CRACKED IN THE EVENING TO HAVING AN 18INCH CRACK IN THE MORNING. NOTHING OCCURRED DURING THIS TIME TO CAUSE THE CRACK. THE CAR WAS PARKED IN THE BACK OF MY DRIVEWAY OVERNIGHT. THE CRACK CONTINUE TO GROW ANOTHER 6 INCHES BEFORE IT WAS REPLACED 24HRS AFTER THE CRACK APPEARED.

**Date Complaint Filed:** 10/28/2019

**Date of Incident:** 08/09/2019

**Component(s):** VISIBILITY/WIPER

**NHTSA ID Number:** 11271628

**Consumer Location:** ANKENY, IA

### All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

### Details ▲                                           0 Available Documents  ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF2SKASC3KH...

**SUMMARY:**

I HAVE ONLY HAD MY FORESTER FOR 3-4 MONTHS WHEN I NOTICED A CHIP ON THE WINDSHIELD, I CALLED SAFE LIGHT AND THEY CAME TO REPAIR IT. THEN IT CRACKED ACROSS MY WINDSHIELD NEEDING TO BE REPLACED. THE VERY NEXT WEEK ANOTHER CHIP HAPPENED WHILE I WAS DRIVING UNDER 35 MPH. I HAVE TO GET THE WINDSHIELD REPLACED AND RE CALIBRATED WHICH IS 1,000-2,000 +

---

**Date Complaint Filed:** 10/28/2019

**Date of Incident:** 10/03/2019

**Component(s):** UNKNOWN OR OTHER , VISIBILITY/WIPER

**NHTSA ID Number:** 11271585

**Consumer Location:** WAUWATOSA, WI

### All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2018 |

### Details ▲                                           0 Available Documents  ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF2SJAEC4JH...

**SUMMARY:**

I WOKE UP ONE MORNING TO FIND A CRACK IN MY WINDSHIELD IN THE BOTTOM RIGHT (PASSENGER SIDE). I PARK MY CAR IN OUR DRIVEWAY, NOT IN THE STREET. I RARELY EVEN DRIVE ON THE HIGHWAY AS I WORK A HALF MILE FROM MY HOUSE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Date Complaint Filed:** 10/28/2019                    **Date of Incident:** 10/15/2019
**Component(s):** UNKNOWN OR OTHER              **NHTSA ID Number:** 11271479
**Consumer Location:** HIGHLAND PARK, IL

**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2020 |

**Details ▲**                                        0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAXC0LH...

**SUMMARY:**
I OWNED MY 2020 FORESTER FOR LESS THAN 2 WEEKS AND I GOT A CRACK IN MY WINDSHIELD
WHILE DRIVING ON A CITY STREET GOING LESS THAN 30 MILES PER HOUR. I DID NOT SEE
ANYTHING HIT MY WINDSHIELD, BUT HEARD A CRACK AND SAW THE CRACK IN THE WINDSHIELD.

**Date Complaint Filed:** 10/28/2019                    **Date of Incident:** 01/17/2019
**Component(s):** VISIBILITY/WIPER                **NHTSA ID Number:** 11271560
**Consumer Location:** GRAND RAPIDS, MI

**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

**Details ▲**                                        0 Available Documents  ?

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAWC6KH...

**SUMMARY:**
WINDSHIELD HAS CRACKED TWO TIMES IN LESS THAN A YEAR. IN ONE INSTANCE IT WAS A
MINOR ROCK CHIP (INCURRED WHILE DRIVING ON HIGHWAY NEXT TO CONSTRUCTION VEHICLE)
THAT TURNED INTO A FULL-BLOWN CRACK WITHIN 5 MINUTES, IN THE OTHER THERE APPEARS
TO BE NO CAUSE (VEHICLE WAS PARKED OVERNIGHT, CRACK APPEARED IN AM)

CLASS ACTION COMPLAINT

**Date Complaint Filed:** 10/13/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** Unknown

**Date of Incident:** 10/12/2019
**NHTSA ID Number:** 11268172

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2019 |

**Details** ▲                                    0 Available Documents   ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SKAUC5KH...

**SUMMARY:**
JUST YESTERDAY MY SUBARU EXPERIENCED AN INEXPLICABLE SUDDEN WINDSHIELD FRACTURE. THE CAR WAS PARKED IN MY DRIVEWAY WARMING UP AND I TURNED ON THE FRONT DEFROSTER AND SUDDENLY, FROM THE BOTTOM CENTER OF THE WINDSHIELD, A GIANT CRACK APPEARED OUT OF NOWHERE. MY FORESTER CURRENTLY HAS 7600 MILES ON IT AND A ROCK/STONE HAS NEVER STRUCK MY WINDSHIELD. I AM THE ONLY DRIVER OF THIS VEHICLE. THIS CRACK STARTED AT THE VERY BOTTOM CENTER OF THE WINDSHIELD UNDER THE PLASTIC MOLDING PART AND MADE ITS WAY UP FROM THERE. THE CRACK STARTED IMMEDIATELY ADJACENT TO THE HEATING ELEMENTS / DEFROSTER ON THE BOTTOM MIDDLE FRONT WINDSHIELD AS SOON AS I ACTIVATED THE FRONT DEFROST FEATURE.

**Date Complaint Filed:** 04/05/2019
**Component(s):** VISIBILITY/WIPER
**Consumer Location:** AUBURN, CA

**Date of Incident:** 03/25/2019
**NHTSA ID Number:** 11194149

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | FORESTER | 2018 |

**Details** ▲                                    0 Available Documents   ?

**Crash:** No     **Fire:** No     **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.
**Vehicle Identification No. (VIN):** JF2SJAGC6JH...

**SUMMARY:**
2018 SUBARU FORESTER WITH EYESIGHT. 16 INCH LONG CURVED CRACK ORIGINATING FROM DEFROSTER AREA AT BOTTOM OF WINDSHIELD ON DRIVER'S SIDE, CURVING UP INTO DRIVER'S FIELD OF VISION. CRACK OCCURRED WHILE VEHICLE WAS STATIONARY, PARKED IN OWNER'S DRIVEWAY. NOTHING WAS SEEN OR HEARD STRIKING THE WINDSHIELD BEFORE THE CRACK SUDDENLY APPEARED.

CLASS ACTION COMPLAINT

# CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follows:

**Nationwide Class:** All persons or entities who purchased or leased a Class Vehicle in the United States and (i) suffered a damaged windshield or (ii) who own or lease a Class Vehicle with the original or replacement windshield.

**California Subclass:** All persons or entities in the Nationwide Class who reside in California or who purchased or leased a Class Vehicle in California and (i) suffered a damaged windshield or (ii) who own or lease a Class Vehicle with the original or replacement windshield.

("Nationwide Class" and "California Subclass," collectively, "the Class").

52.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

53.    Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

54.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

55.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

56.    **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a.  Whether Defendant made and breached express warranties concerning the windshields in the Class Vehicles;

b.  Whether Defendant made and breached implied warranties concerning the windshields in the Class Vehicles;

c.  Whether the windshields in the Class Vehicles are defective;

d.  Whether Defendant fraudulently omitted and/or concealed knowledge of the defect in the windshields in the Class Vehicles;

e.  Whether Defendant should accept responsibility for replacing the windshields in the Class Vehicles and/or buying back the Class Vehicles;

Whether monetary damages, exemplary damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

57.    **Typicality**:  Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased a defective Class Vehicle.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The defect inherent to

the Class Vehicles Plaintiffs purchased is identical to the defect in the Class Vehicles purchased by Class Members.  Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

58.    **Adequacy**: Plaintiffs are adequate representatives of the Class they seeks to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent.  Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

59.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.  The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.  Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.  Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined

uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

60. Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

61. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

62. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>**COUNT ONE**</u>

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

**(15. U.S.C. § 2301, et seq.)**

**(On behalf of the Nationwide Class and California Subclass)**

63. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

64. Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

65. Plaintiffs each is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

66. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

67.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

68.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

69.    Subaru's new vehicle warranties and representations as to the quality of the Class Vehicles are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A), (B).

70.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

71.    Subaru breached these warranties, as described in more detail above. Without limitation, the Class Vehicles are equipped with defective windshields that are failing and put vehicle occupants' safety in jeopardy. The Class Vehicles share a common defect in that the windshields are manufactured with defective materials and/or with poor workmanship. Contrary to Subaru's representations about its vehicles, the defective windshields are defective in manufacture, materials and/or workmanship and are unsafe. The Class Vehicles share a common defect that causes or allows the windshields to spontaneously and/or otherwise unreasonably break under circumstances in which non-defective windshields would not. The windshield failures are occurring within the warranty terms and period.

72.    Subaru further breached its written warranties by not repairing and replacing the broken windshields, or performing additional repairs such as recalibrating driver assist systems in the Class Vehicles, pursuant to the three year/36,000 mile new vehicle written warranty.

73.    Plaintiffs and the members of the Nationwide Class and Subclass have had sufficient dealings with either Subaru or its agents (e.g., dealerships and technical support) to establish privity between Subaru on one hand, and Plaintiffs and each of the Class Members on the other hand. Nonetheless, privity is not

required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Subaru and its dealers, and specifically, of Subaru's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

74.    Affording Subaru a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Subaru has long been on notice of the claims of Plaintiffs and Class Members and has refused to provide a remedy.

75.    At the time of sale or lease of each Class Vehicle, Subaru knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' defective windshields and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Subaru a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

76.    Plaintiffs and the other Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Subaru is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Class Vehicles by retaining them.

77.    The amount in controversy of Plaintiffs' respective individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis

of all claims to be determined in this lawsuit.

78.    Plaintiffs, individually and on behalf of all members of the Class, seek all damages permitted by law, in an amount to be proven at trial.

## COUNT TWO

## BREACH OF EXPRESS WARRANTY

### (On behalf of the Nationwide Class and California Subclass)

79.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

80.    Plaintiff Nevarez brings this claim individually and on behalf of the Nationwide Class and California Subclass.

81.    Subaru is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

82.    With respect to leases, Subaru is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

83.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

84.    In connection with the purchase or lease of each one of its new vehicles, Subaru provides an express new vehicle warranty for a period of three years or 36,000 miles, whichever occurs first.  This NVW exists to cover "defect in materials or workmanship."

85.    Subaru's NVW is uniform and made to all consumers across the country who purchase or lease the Class Vehicles.

86.    Subaru's NVW formed the basis of the bargain that was reached when Plaintiff Nevarez and other members of the Class purchased or leased their Class Vehicles equipped with the defective windshields.

87.    Plaintiff Nevarez and Class Members experienced defects within the

warranty period. Despite the existence of the NVW, Subaru failed to inform and/or denied to Plaintiff Nevarez and Class Members that the Class Vehicles have defective materials and/or workmanship, and have failed to fix, repair or replace the defective windshields pursuant to the terms of the NVW and at no charge to the Class.

88.   Subaru breached the NVW promising to repair and correct a manufacturing defect or defective materials or workmanship of any part of the Class Vehicles.

89.   Subaru was provided notice of the defect in the Class Vehicles' windshields by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through Subaru's own testing. Accordingly, affording Defendant a further reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed and denied the existence of the defect in the windshields and has failed to provide a suitable repair or replacement of the defective windshields free of charge within a reasonable time.

90.   Affording Subaru any additional opportunity to cure its breach of written warranties would be unnecessary and futile.

91.   Furthermore, the warranty promising to repair and/or correct a manufacturing or workmanship defect fails in its essential purpose because the remedy is insufficient to make Plaintiff Nevarez and Class Members whole, and because the replacement windshields that have and are being installed are likewise defective, and because Subaru has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

92.   Accordingly, recovery by Plaintiff Nevarez and the other Class Members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff Nevarez, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

93.    Also, as alleged in more detail herein, at the time Subaru warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to Subaru's warranties and were inherently defective, and Subaru wrongfully concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretense.

94.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to Subaru's conduct as alleged herein. Due to Subaru's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make Plaintiff and the other Class Members whole.

95.    Subaru was provided notice of these issues by numerous complaints voiced by consumers, including those formal complaints submitted to NHTSA, within a reasonable amount of time after the defect was discovered.

96.    Because of Defendant's breach of express warranty as set forth herein, Plaintiffs Nevarez and members of the Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

97.    As a direct and proximate result of Subaru's breach of express warranties, Plaintiff Nevarez and all members of the Class have been damaged in an amount to be determined at trial.

///

///

///

# COUNT THREE

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On behalf of the Nationwide Class and California Subclass)

98.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

99.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

100.   Plaintiffs and members of the Class purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

101.   At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

102.   Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law. With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

103.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law. Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the windshields and present an undisclosed safety hazard to drivers, occupants and the public. Thus, Defendant breached its implied warranty of merchantability.

104.    Defendant received notice of defective windshields by numerous consumer complaints made to dealers and distributors and/or other public complaints and through its own testing and investigations.  Affording Defendant a further opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant knew of and concealed the defect and has refused to repair or replace the defective windshields, and additional losses, at no cost to Plaintiffs and the Classes.

105.    Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable.  A gross disparity in bargaining power and knowledge existed between Defendant and members of the Classes. Defendant knew or should have known that the Class Vehicles and windshields were defective and posed a serious safety risk.

106.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and all members of the Classes have been damaged in an amount to be proven at trial.

## COUNT FOUR

### NEGLIGENT MISREPRESENTATION/OMISSION

### (On behalf of the Nationwide Class and California Subclass)

107.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

108.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

109.    Subaru intentionally or negligently concealed or omitted the above-described safety and functionality information concerning the defects in the windshields, which was material to consumers, or acted with reckless disregard for the truth, and denied Plaintiffs and Class Members information that is highly relevant to their purchasing decision.

110.    Subaru affirmatively misrepresented to Plaintiffs and Class Members

in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling were new and reliable, were safe to operate, were engineered and manufactured with safety being a priority, had no significant defects, and would perform and operate properly when driven in normal usage. Subaru knew at the time it actively concealed or omitted the information about the defective windshields that this information was material to consumers.

111.  The Class Vehicles purchased or leased by Plaintiffs and the other Class Members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective windshields, as alleged herein.

112.  Subaru owed Plaintiffs and Class Members a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at Subaru, because Plaintiffs and other Class Members relied on Subaru's material representations that the Class Vehicles were safe and reliable.  The aforementioned concealment and omissions were material because, if they had been disclosed, Plaintiffs and other Class Members would not have bought or leased the Class Vehicles, or would not have bought or leased those Class Vehicles at the prices they paid.

113.  Plaintiffs and Class Members relied on Subaru's reputation – along with Subaru's failure to disclose the faulty and defective nature of the windshields – in purchasing or leasing the Class Vehicles.  As a result of their reliance, Plaintiffs and the other Class Members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

114.  As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiffs and all Class Members have been damaged in an amount to be proven at trial.

## COUNT FIVE

### UNJUST ENRICHMENT

### (On behalf of the Nationwide Class and California Subclass)

115.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

116.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

117.   Subaru has received and retained a benefit from Plaintiffs and the Class and inequity has resulted.

118.   Subaru has benefitted from selling and leasing defective cars whose value was artificially inflated by Subaru's concealment of the defective windshields, and Plaintiffs and the Class have overpaid for the cars and have been forced to pay other costs.

119.   All Class Members conferred a benefit on Subaru.

120.   It is inequitable for Subaru to retain these benefits.

121.   Plaintiffs and the Class were not aware of the true facts about the Class Vehicles, and did not benefit from Subaru's conduct.

122.   Subaru knowingly accepted the benefits of its unjust conduct.

123.   As a result of Subaru's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

124.   Plaintiffs, individually and on behalf of all the members of the Class, seek all relief permitted in accord with the proof at trial.

## COUNT SIX

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200, et seq.)

### (On behalf of the California Subclass)

125.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

126.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

127.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

128.    Subaru's conduct violates the UCL in the following ways:

a.    By knowingly and intentionally concealing from Plaintiffs and the other Class Members that the Class Vehicles suffer from a windshield defect while obtaining money from Plaintiffs and the Class;

b.    By marketing the Class Vehicles as safe and reliable and possessing fully functional and defect-free windshields;

c.    By refusing or otherwise failing to repair and/or replace defective windshields in Class Vehicles at no cost to Class Members;

d.    By violating federal laws and/or regulations by failing to recall and repair vehicles that contain a safety defect;

e.    By violating other California laws, including California laws governing false advertising and consumer protection.

129.    Subaru's misrepresentations and omissions alleged herein caused Plaintiffs and the other Subclass members to make their purchases or leases of their Class Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective windshields.

130.    Accordingly, Plaintiffs and the other Subclass members have suffered injury in fact, including lost money or property, as a result of Subaru's misrepresentations and omissions.

131.    Because Subaru fraudulently concealed the defective windshields and the true performance of vehicles equipped with the defective windshields, the Subclass members overpaid for their vehicles and did not receive vehicles of the value and quality represented.

132.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Subaru under Cal. Bus. & Prof. Code § 17200.

133.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Subaru from continuing its unfair, unlawful, and/or deceptive practices; to restore to Plaintiffs and members of the Subclass any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as is just and appropriate.

## <u>COUNT SEVEN</u>

**Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* and California Commercial Code § 2314 (On Behalf of the California Subclass)**

134.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

135.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

136.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, and California Commercial Code § 2314, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.    In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's

skill or judgment to furnish suitable goods consistent with that represented purpose.

137.    The Class Vehicles at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

138.    Plaintiffs and California Subclass Members who purchased one or more of the Class Vehicles are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

139.    Defendant is in the business of manufacturing, assembling, producing and/or selling the Class Vehicles to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

140.    Defendant impliedly warranted to retail buyers that the Class Vehicles were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Class Vehicles are used.    In order for a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.    Defendant breached these implied warranties because the Class Vehicles were unsafe and defective.    Therefore, the Class Vehicles would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

141.    Plaintiffs and California Subclass Members purchased the Class Vehicles in reliance upon Defendant's skill and judgment to furnish suitable goods.

142.    The Class Vehicles were not altered by Plaintiffs or California Subclass Members.

143.    The Class Vehicles were defective at the time of sale when they left the exclusive control of Defendant. The defect described in this Complaint was latent in the product and not discoverable at the time of sale.

144.    Defendant knew that the Class Vehicles would be purchased and used without additional testing by Plaintiffs and California Subclass Members.

145.    As a direct and proximate cause of Defendant's breach of the implied

warranty, Plaintiffs and California Subclass Members have been injured and harmed because they would not have purchased the Class Vehicles if they knew the truth about the products.

146.  Plaintiffs seek the civil penalties described in Civil Code §1794(c), including a penalty up to two times the amount of Plaintiffs' actual damages.

## **PRAYER FOR RELIEF**

1.  WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

    a.  For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Nationwide Class and California Subclass; and naming Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class and California Subclass;

    b.  For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

    c.  For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action;

    d.  For an order requiring Defendant to immediately cease and desist from selling its unlawful Class Vehicles in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Class Vehicles in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

    e.  For an order awarding attorneys' fees and costs;

    f.  For an order awarding punitive damages;

    g.  For an order awarding pre-and post-judgment interest; and

    h.  For such other and further relief as the Court deems just and proper.

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand trial by jury on all causes of action.

3

4

Dated: December 10, 2019                    Respectfully submitted,

5

6

**MOON LAW APC**

7

8

By: _____

CHRISTOPHER D. MOON
KEVIN O. MOON

9

Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT